**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

Case No. 6:23-cv-01887

**WOMEN IN STRUGGLE, et al.**

*Plaintiffs*,

vs.

**ANDREW BAIN, et al.**

*Defendants.*

_____/

**DEFENDANT THOMAS DRAPER'S CORRECTED RESPONSE IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND MEMORANDUM IN SUPPORT [DOC. 2][1]**

Defendant Thomas Draper opposes Plaintiffs' Emergency Motion for a Temporary Restraining Order. Doc. 2 (hereinafter "Motion"). Although titled as an "emergency" motion, there was no emergency that justified the last-minute filing by the Plaintiffs, which required Defendants to secure counsel and quickly prepare a response over the weekend to Plaintiffs' detailed 25-page Motion.

Plaintiffs have been planning the National March to Protect Trans Youth and Speakout for Trans Lives, scheduled for Saturday, October 7, 2023, since March 31, 2023. *See* Declaration of Daniel J. Gerber, attached as **Exhibit 1,** at ¶ 15**.** In the months since, several postings on social media have made about the

---

[1] This corrected Response is filed solely to include Exhibit I to the Declaration of Daniel J. Gerber, which was inadvertently excluded from the original Response filed at Doc. 27.

event. *Id.* at ¶¶4-13. And then on September 5, 2023, the event organizers applied for the permit with the City of Orlando. *Id.* at ¶ 16.

In short, the October 7th event has been in the works for many months, with the details for it pinned down since at least June 2023. No reason has been offered by Plaintiffs as to why they waited until eight days before the event, and only days before Plaintiffs were set to arrive in Orlando, before seeking a temporary restraining order enjoining the enforcement of Florida Statute Section 553.865 (hereinafter the "Act"). Without such an explanation, it appears that Plaintiffs held off on filing their Complaint and Motion for strategic purposes, in an attempt to deprive Defendants from being able to fully respond to their requested relief.

Plaintiffs' delays are enough to deny the instant motion outright. This Court has consistently found that "a plaintiff cannot establish the threat of irreparable injury sufficient to warrant entry of an *ex parte* temporary restraining order where the emergency nature of the motion is caused by the plaintiff's own delay." *Grames v. Sarasota Co., Fla.*, No. 8:20-cv-739-T-36CPT, 2020 WL 1529539, at *4, (M.D. Fla. Mar. 31, 2020)*; see also Wreal, LLC v. Amazon.com Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("[A] party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm."); *Allstate Ins. Co. v. Gardner*, No. 6:14-CV-681-ORL-31GJK, 2014 WL 12575828, at *2 (M.D. Fla. May 2, 2014) ("Delay in seeking a TRO undercuts the proposition that there is a threat of irreparable injury.").

Setting that aside, Plaintiffs' Motion should also be denied because they lack standing to bring their claims against Defendant Draper – Chief of Operations for the Greater Orlando Aviation Authority ("GOAA"). In his capacity as Chief of Operations, Mr. Draper is responsible for the operation and maintenance of the physical facilities of Orlando International Airport ("MCO"). *See* Decl. of Thomas Draper attached as **Exhibit 2**. He does not, however, have the power to arrest. *Id.* Plaintiffs' theory of standing which is premised on an imminent arrest is both speculative and hypothetical as well as not fairly traceable to any perceived conduct of Mr. Draper.

Further, even if they had standing, Plaintiffs cannot establish a substantial likelihood on the merits of their claims, irreparable harm, or that the balance of equities is in their favor in their claims against Defendant Draper – necessitating denial of their Motion.

I. <u>**ARGUMENT**</u>

**A. Plaintiffs Lack Article III Standing**

"The law of Article III standing, which is built on separation-of-power principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 408 (2013). To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

3

The injury-in-fact requirement ensures that the plaintiff has a "personal stake in the outcome of the controversy." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). An injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical'." *Lujan*, 504 U.S. at 560. An allegation of future injury may suffice if the threatened injury is "certainly impending," or there is a "'substantial risk' that the harm will occur." *Clapper*, 568 U.S. at 409. "Allegations of *possible* future injury are not sufficient." *Id.* (internal quotations omitted).

The party invoking federal jurisdiction bears the burden of establishing standing. "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

Here, Plaintiffs claim they can establish injury-in-fact sufficient for individual standing because "Defendants' enforcement of the Ban is forcing them to alter their practices concerning restroom use, resign themselves to arrest, or in the case of Plaintiff Women in Struggle, divert resources away from other organizational initiatives to develop safety plans for members." Doc. at pp. 5-6. In addition, some Plaintiffs allege they will hold their urine despite the physical discomfort. *Id.* at p. 6.

First, it is not clear their perceived injury is "imminent." Several plaintiffs claim they will use the restroom of their choice despite the law. But this does not

4

mean they will necessarily be arrested or trespassed. *See, e.g., Clapper,* 568 U.S. at 410. And, for other Plaintiffs, this injury seems avoidable as they could use the restrooms on the plane in which they flew or one of the 29 unisex restrooms located throughout MCO. *See* **Ex. 2** at ¶ 5.

Second, the perceived harm of the potential for arrest is not fairly traceable to the conduct of Defendant Draper. Plaintiffs claim their "imminent injury" -- i.e., arrest – is "fairly traceable to Defendants because Defendants are 'seriously intent' on enforcing the ban in public restrooms." Doc. 2 at p. 8. But this allegation is unsupported by any *evidence* of Draper's intent.

Third, the only requirement imposed on GOAA by the Act is to have restrooms and changing rooms in accordance with § 553.865(4) and (5) – which it does. *See* **Ex. 2** at ¶ 5.

Therefore, Plaintiffs' assertion that their use of the restrooms will subject them to the risk of arrest *by Mr. Draper* is highly speculative and hypothetical. Importantly, Plaintiffs have failed to point to evidence of transgender customers being arrested at MCO or under the authority of Mr. Draper in the past.

Plaintiffs' allegations of injury in fact are based on their unsubstantiated fear that (1) they will use a certain restroom, (2) they will be noticed by someone as both transgender and in violation of the Act, (3) that person will then notify an employee of GOAA, (4) an employee of GOAA will then decide to confront Plaintiffs and ask them to leave, (5) Plaintiffs will refuse, (6) GOAA will then notify law enforcement, and (7) law enforcement will arrest Plaintiffs and charge them

with trespass. There is no support that this chain of events is *likely* to happen. As a consequence, the "threatened injury" – arrest at the hands of Mr. Draper – is not shown to be "certainly impending" or even that there is a "substantial risk" that this will occur.

Plaintiffs' theory of standing, which relies on a highly attenuated chain of possibilities, does not meet Article III requirements. *See Clapper*, 568 U.S. at 410 (finding no Article III standing based on their highly speculative fear that they will be surveilled by the government).

**B. Motion for Temporary Restraining Order**

The Federal Rules of Civil Procedure provide that a district court may issue a temporary restraining order without notice to the adverse party or its attorney if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

To obtain a temporary restraining order, a party must prove "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (citation omitted). A temporary restraining order "is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)).

1. **Plaintiffs Are Not Likely to Succeed on the Merits of Their Claims Against Defendant Draper.**

   a. **First Amendment Claims.**

In the instant case, as it relates to Defendant Draper, Plaintiffs generally allege that their conduct of choosing to urinate in a gender affirming restroom at MCO is protected speech under the First Amendment. Doc.1, ¶ 2. However, the Supreme Court of the United States has expressly rejected the view "that an apparently limitless variety of conduct can be labeled as 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *U.S. v. O'Brien,* 391 U.S. 367, 376 (1968).

In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, courts employ a two-prong test:

(1) whether an intent to convey a particularized message was present; and (2) whether the likelihood was great that the message would be understood by those who viewed it. *Texas v. Johnson*, 491 U.S. 397, 404 (1989).

As to the first prong, Plaintiffs assert that by using a gender affirming restroom to urinate, they communicate their gender identity in a way that society can understand. Doc.1, ¶ 2. However, Judge Jung from this district has previously recognized that "restroom use itself is not expressive conduct." *Poor and Minority Justice Ass'n, Inc. v. Judd*, No. 8:19-cv-T-2889-02TGW, 2020 WL 7128948, at *4 (M.D. Fla. Dec. 2, 2020) (citing *U.S. v. Gilbert*, 970 F.2d 878, 883 (11th Cir. 1991) (labeling use of a bathroom as "concededly unprotected activit[y]")). Something more, such as the conduct being part of the message delivered by a demonstration, is likely needed for a natural bodily function to rise to the level of expressive conduct. *See Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 294-95 (1984) (assuming that overnight sleeping in connection with a political demonstration is expressive conduct protected to some extent).

Notably, as it relates to Defendant Draper, the Plaintiffs' intent behind the alleged potential use of the restrooms at MCO does not appear to be in conjunction with the October 7th protest, but, rather, as a way to "naturally" relieve oneself after long travels. *See* Doc.1, ¶¶ 11-14, 16.

As to the second prong, there is not a great likelihood that the Plaintiffs' purported message would be understood by those who viewed it. There is no

8

information availed by Plaintiffs' Complaint establishing that anyone subject to Plaintiffs' message at MCO would understand it as an act of protest. MCO currently serves, on average, one-million air passengers per week. *See* **Ex. 2** at ¶4. Common sense dictates that most, if not all, of MCO's passengers do not personally know Plaintiffs or their gender identification before their gender affirming treatments, and therefore will not view their act of choosing a certain restroom as a sign of protest.

Because Plaintiffs cannot show an intent to convey a message and that the likelihood is great that the message will be understood by those who view it, they cannot establish that their use of a particular restroom is expressive conduct warranting the instant relief sought here.

### b. Equal Protection Claims

Classifications based on transgender status or gender non-conformity are generally held to be sex-based classifications under the Equal Protection Clause, thus subjecting these classifications to intermediate scrutiny. *Adams by and through Kasper v. School Board of St. Johns County*, 57 F.4th 791, 803 (11th Cir. 2022). To satisfy intermediate scrutiny, the Act must "(1) advance an important governmental objective and (2) be substantially related to that objective." *Id*.

Plaintiffs have failed to demonstrate that the Act does not advance an important governmental objective. *See* Fla. Stat. § 553.865 (stating the important governmental objectives that it promotes: "public safety, decency, decorum, and

9

privacy"); *see also Adams,* 57 F.4th at 804 (recognizing privacy interest as an important governmental interest).

And, Plaintiffs have failed to demonstrate that attempts to ensure that people use public restrooms in accordance with their sex is not substantially related to furthering the government's important interest in protecting individual privacy. The Eleventh Circuit in *Adams* stated "[it is a] generally acceptable notion that the protection of individual privacy will occasionally require some segregation between the sexes is beyond doubt." *Id.*

### c. The Due Process Claims

A law is unconstitutionally vague under the Fourteenth Amendment's Due Process Clause only where it "fails to provide people with ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or because it "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). But the Due Process Clause does not demand perfection from legislators. *See Grayned v. City of Rockford*, 408 U.S. 104, 110-11 (1972) ("[W]e can never expect mathematical certainty from our language."). Moreover, "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *U.S. v. Williams*, 553 U.S. 285 (2008).

Here, the Act is not impermissibly vague as to Defendant Draper. Plaintiffs' Complaint clearly alleges which restrooms Plaintiffs intend to use while in

Orlando and whether such usage would be in compliance with Florida Statute §553.865. *See* Doc. 1, ¶¶ 11-16. Though Plaintiffs complain that the Act does not include "clear enforcement standards," such an argument has no application to Defendant Draper. As set forth above, there is a lengthy unbroken chain of events which must first occur before any Plaintiff is at risk of prosecution which, at this time, are speculative and not in Draper's control.

### d. The Right to Travel Claims

Plaintiffs' motion summarily argues that the Act unconstitutionally burdens their right to travel. However, they offer no facts or legal authority to support a temporary restraining order against Defendant Draper. Indeed, Plaintiffs' Complaint specifically alleges that all of the individual Plaintiffs are traveling to Florida. *See* Doc. 1, ¶¶ 11-16. They have offered no explanation as to why Mr. Draper's possible conduct would infringe upon such travel. Without more, Plaintiffs have not established any basis for prevailing on Counts Five and Six of their Complaint. *See, e.g., Wall v. Centers for Disease Control and Prevention*, 543 F. Supp. 3d 1290, 1293 (M.D. Fla. 2021) (finding that the federal mask mandate did not prevent plaintiff from traveling because he could either comply with the law or use other modes of transportation).

### B. Plaintiffs Have Not Met Their Burden To Prove a Substantial Likelihood of Irreparable Injury

The Eleventh Circuit has made plain that a substantial likelihood of irreparable injury is "the *sine qua non* of injunctive relief." *Siegel v. LePore,* 234

F.3d 1163, 1176 (11th Cir. 2000) (internal quotations omitted) (quoting *Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville,* 896 F.2d 1283, 1285 (11th Cir. 1990)). "The key word in this consideration is *irreparable,*" because "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *City of Jacksonville*, 896 F.2d at 1285 (emphasis in original) (citations omitted). But the Eleventh Circuit has also made clear that "the asserted irreparable injury 'must neither be remote nor speculative, but actual and imminent." *Siegel*, 234 F.3d at 1176 (quoting *City of Jacksonville*, 896 F.2d at 1285). Plaintiffs do not meet this burden for three reasons.

Again, Plaintiffs have failed to demonstrate that the "Ban" will be enforced against them *by Mr. Draper*. At this stage, Plaintiffs' general factual allegations are insufficient to establish injury. They must provide evidence of injury in order to meet their burden to obtain a preliminary injunction. *See Palmer v. Braun,* 155 F. Supp. 2d 1327, 1331 (M.D. Fla. 2001), *aff'd,* 287 F.3d 1325 (11th Cir. 2002) ("To carry its burden, a plaintiff seeking a preliminary injunction must offer proof beyond unverified allegations in the pleadings.") Plaintiffs have not done that here.

Second, Plaintiffs fail to explain why using one of the 29 unisex bathrooms throughout MCO will cause irreparable harm.

Third, even if Plaintiffs faced such an injury, their significant delay in seeking this relief demonstrates it is not imminent. Motions for preliminary

injunction must "show[ ] 'imminent' irreparable harm." *Wreal, LLC v. Amazon.com Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (quoting *Siegel*, 234 F.3d at 1176-77). Indeed, "the very idea of a preliminary injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Wreal*, 840 F.3d at 1248. For this reason, the Eleventh Circuit has held that "a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *Id.* This is the case here.

The Act was passed on May 3, 2023, and went into effect on July 1, 2023. Since that time, Plaintiffs have actively planned for the October 7th protest in Orlando. *See* **Ex. 1** and its attachments. Yet they waited until September 29, 2023 – a mere three days before the first intended flights into Orlando – to file their Complaint and Motion. Plaintiffs offer no explanation for their lack of urgency and delay. This Complaint and Motion could have been filed in May, shortly after the Act's passage. *See Wreal*, 840 F.3d at 1248-49 (finding no irreparable harm where plaintiff waited five months between filing its complaint and seeking injunction because it "failed to offer any explanation for its . . . delay" and the motion "relied exclusively on evidence that was available to [the plaintiff] at the time it filed ins complaint".)

Plaintiffs' obvious lack of urgency and intentional delay clearly demonstrates that they do not face imminent irreparable harm.

### C. The Balance of Equities and Public Interest Favor Denying the Motion

The remaining factors – balance of the equities and the public interest – further support denying the Motion. Enjoining the Act would severely curtail GOAA's ability to enforce the Act. *See, e.g., Maryland v. King*, 567 U.S. 1301, 1303 (2012) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.") (quoting *New Motor Vehicle Bd. Of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977)).

Also, Plaintiffs have not met their burden in demonstrating that their Motion will not harm the public interest as they fail to address the public interest identified specifically in the Act, *see* Fla. Stat. § 558.865(2), instead referring solely to the public's lack of interest in the enforcement of an unjust law.

For these reasons, the final two prongs weigh in favor of denying the Motion.

## II. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for a Temporary Restraining Order should be denied.

Respectfully submitted,

*/s Daniel J. Gerber*
DANIEL J. GERBER
GENERAL COUNSEL, GREATER ORLANDO
AVIATION AUTHORITY
Florida Bar No.: 0764957
E-mail: dgerber@rumberger.com
SALLY R. CULLEY
Florida Bar No. 0095060
E-Mail: sculley@rumberger.com
SAMANTHA C. DUKE
Florida Bar No. 0091403
E-Mail: sduke@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 South Orange Avenue, Suite 1400
Orlando, Florida 32801
Tel: 407.872.7300 / Fax: 407.841.2133
Attorneys for Thomas W. Draper

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 3, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s *Daniel J. Gerber*
DANIEL J. GERBER
GENERAL COUNSEL, GREATER ORLANDO
AVIATION AUTHORITY
Florida Bar No.: 0764957
E-mail: dgerber@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 South Orange Avenue, Suite 1400
Orlando, Florida 32801
Tel: 407.872.7300 / Fax: 407.841.2133
Attorneys for Thomas W. Draper