# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

WOMEN IN STRUGGLE, MELINDA
BUTTERFIELD, CHRISTYNNE WOOD,
BRIANNA KELLY, TSUKURU FORS,
LINDSEY SPERO and ANAIS
KOCHAN,

        Plaintiffs,

v.                          Case No.: 6:23-cv-1887-WWB-DCI

ANDREW BAIN, ERIC SMITH, KEVIN
EDMONDS, DAVID DUNN, SPENCER
TONG, KORY KEITH, JOHN W. MINA,
JARED PERDUE, JOHN TYLER,
THOMAS DRAPER and ALEX
MARTINS,

        Defendants.
_____/

## ORDER

THIS CAUSE is before the Court on Plaintiffs' Emergency Motion for a Temporary Restraining Order ("**TRO**," Doc. 2) and Defendants'[1] Responses (Doc. Nos. 21, 22, 23, 25, 27, 28, 53)[2] thereto. For the reasons set forth below, the TRO will be denied.

---

[1] Defendant Spencer Tong was not served until October 2, 2023, and subsequently obtained counsel after the response deadline set by the Court. Upon due consideration, the Court finds good cause to accept Tong's untimely Response and will consider the same.

[2] Many of Defendants' Responses fail to comply with this Court's January 13, 2021 Standing Order. In the interests of justice—and noting the exigent circumstances created by Plaintiffs' delay in seeking injunctive relief—, the Court will consider the filings, but the parties are cautioned that future failures to comply with all applicable rules and orders of this Court may result in the striking or denial of filings without notice or leave to refile.

I.   BACKGROUND

Plaintiffs Melinda Butterfield, Christynne Wood, Brianna Kelly, Tsukuru Fors, Lindsey Spero, and Anaïs Kochan (collectively, the "**Individual Plaintiffs**") are persons that identify as transgender or non-binary. (Doc. 1, ¶¶ 11–16). The Individual Plaintiffs plan to travel to and in Orlando, Florida from approximately September 29, 2023, to October 8, 2023, to promote and participate in a march for "transgender, gender nonconforming, and certain intersex people" ("**TGNCI**"). (*Id.* ¶¶ 2–3, 149, 178, 180, 191, 199, 219, 272, 301). The March is being organized and sponsored by Plaintiff Women in Struggle, "a collective dedicated to the empowerment and advancement of all women." (*Id.* ¶ 10).

While traveling to, promoting, and participating in the rally, Plaintiffs allege that they, and other participants, will likely need to use public restrooms in the airport, along the highways and interstates, and in other public buildings, such as Orlando City Hall and on the campus of the University of Central Florida ("**UCF**"). (*See, e.g.*, *id.* ¶¶ 201, 221, 233–236, 253, 263, 273, 294, 304). Plaintiffs allege, however, that section 553.865, Florida Statutes ("**Safety in Private Spaces Act**"), will prevent them from using their preferred restroom facilities, subjects them to possible criminal penalties, and infringes their legal rights. (*See generally id.*).

As a result, Plaintiffs filed a ten count Complaint (Doc. 1) seeking declaratory and injunctive relief pursuant to the First, Fourth, and Fourteenth Amendments and the Full Faith & Credit Clause of the United States Constitution and the Florida Constitution. (*See generally id.*). Plaintiffs bring claims against the following Defendants in their official capacities: Andrew Bain, the State Attorney for the 9th Judicial Circuit of Florida; Eric

Smith, the Chief of the Orlando Police Department; Kevin Edmonds, the Chief Administrative Officer of the City of Orlando; David Dunn, the City Facilities Manager for the City of Orlando; Spencer Tong, the Executive Vice President of the Dr. Phillips Center for the Performing Arts ("**Dr. Phillips Center**"); Kory Keith, the Division Manager of the Orlando Code Enforcement Division; John Mina, the Sheriff of Orange County; Jared Perdue, the Secretary of Transportation and head of the Florida Department of Transportation ("**FDOT**"); John Tyler, the District Secretary for FDOT District 5; Thomas Draper, the Chief of Operations for the Greater Orlando Aviation Authority; and Alex Martins, the chair of the UCF Board of Trustees. (*Id.* ¶¶ 17–27). Plaintiffs simultaneously filed the TRO seeking an emergency injunction against enforcement of the law as to Plaintiffs.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 65(b), a district court may issue a temporary restraining order "without written or oral notice to the adverse party" if the requesting party provides "specific facts . . . [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  To obtain a temporary restraining order, the movant must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).  Additionally, the moving party must present facts and evidence stating why "notice is impractical."  M.D. Fla. R. 6.01(b)(2).

## III.    DISCUSSION

The Safety in Private Spaces Act provides, as relevant to this dispute, that "[a] person who willfully enters . . a restroom or changing facility designated for the opposite sex at a public building and refuses to depart when asked to do so by an employee of the governmental entity for the public building that is within the governmental entity's jurisdiction commits the offense of trespass[.]"  Fla. Stat. § 553.865(11)(b).  Similar restrictions apply to restrooms and changing facilities at educational institutions.  Fla. Stat. § 553.865(9)(e).  For the purposes of the statute, "'Sex' means the classification of a person as either female or male based on the organization of the body of such person for a specific reproductive role, as indicated by the person's sex chromosomes, naturally occurring sex hormones, and internal and external genitalia present at birth."  Fla. Stat. § 553.865(1)(*l*).

As an initial matter, Plaintiffs have failed to comply with Local Rule 6.01(b)(2), which requires Plaintiffs to establish "the reason that notice is impractical".  As set forth in the attachments to Plaintiffs' Motion, Women in Struggle began planning the October 7th March "[e]arlier this year[,]" and spent "time and resources [ ] educating [its] members and other March participants about the ban, and strategizing ways to keep them safe from arrest at the March[,]" since the law went into effect on July 1, 2023.  (Doc. 2-3 at 3, 11).  The March "is the result of six months of organizing by numerous trans and gender nonconforming people."  (Doc. 2-9 at 2).  Defendants have presented evidence that Plaintiffs were advertising the March as early as May 29, 2023, and June 1, 2023, (Doc. 27-1 at 72, 93; Doc. 28-1 at 1), and applied for an event permit on September 5, 2023, (Doc. 27-1 at 113).  Additionally, at least one Plaintiff was already en route to Orlando

when the TRO was filed with others to follow shortly, making it clear that plane tickets had been purchased and travel arraignments had been made. Despite this, Plaintiffs fail to address Local Rule 6.01(b)(2) at all, let alone provide any explanation as to why notice and opportunity for Defendants to be heard would be impracticable aside from Plaintiffs' unexplained delay in filing their Motion. Plaintiffs have essentially created their own emergency in what appears to be an attempt to thwart the adversary process and deny Defendants any meaningful opportunity to respond to Plaintiffs' Motion. Additionally, this unexplained delay cuts against any finding of irreparable harm. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm."); *People's Party of Fla. v. Fla. Dep't of State, Div. of Elections*, 608 F. Supp. 3d 1195, 1199 (M.D. Fla. 2022) (applying *Wreal* to constitutional and First Amendment claims); *cf. Dream Defenders v. DeSantis*, 559 F. Supp. 3d 1238, 1285 (N.D. Fla. 2021) (noting that delay is only one factor and holds less weight in cases alleging ongoing constitutional injuries) On this basis alone, the Court can deny the requested relief.

Additionally, the Complaint constitutes a shotgun pleading. "The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'" *Beckwith v. BellSouth Telecomms. Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1029–30 (11th Cir. 2001)). "Shotgun pleadings wreak havoc on the judicial system" and "divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th

Cir. 2006) (quotation omitted). As such, "[w]hen presented with a shotgun complaint, the district court should order repleading *sua sponte*." *Ferrell v. Durbin*, 311 F. App'x 253, 259 n.8 (11th Cir. 2009); *see also Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998) (noting that shotgun pleadings drain judicial resources, and the district should act *sua sponte* to define the issues at the earliest possible stage).

The Eleventh Circuit has defined four types of shotgun pleadings. "The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). The second most common type "is a complaint that . . . is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. "The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1322–23. "Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323.

Here, Plaintiffs' Complaint runs afoul of the second, third, and fourth categories. First, the Complaint contains a myriad of lengthy and unnecessary arguments as to the reasons for the enactment of section 553.865 and the history of this bill and related legislation; a recitation of medical information regarding gender dysphoria and a general

discussion of persons that identify as TGNCI; discussion of provisions of the law that are not relevant to Plaintiffs or the challenges raised in this case and of wholly unrelated legislation that is not at issue here; completely irrelevant discussions of a purported partnership between conservative law makers and private groups to pass laws that allegedly single out individuals that identify as TGNCI; legal arguments and citations; and uncalled for personal attacks on non-parties with absolutely no relationship to this case or the allegations in this case.  To be clear, Plaintiffs include several allegations that might be relevant to ultimately proving their claims, but that do nothing more than create unnecessary clutter at the pleading stage.  Even if such allegations are not immaterial, the complaint is not the proper place for legal argument or posturing.

Conversely, despite challenging the implementation of the new law by Defendants, Plaintiffs have largely offered only vague and conclusory factual allegations as to any actions taken by the various named Defendants in this litigation or precisely what each Defendant could do to harm any Plaintiff.  Moreover, each count challenges the entire Safety in Private Spaces Act as unconstitutional, without specifying the particular subsections and portions of the new law Plaintiffs contend violate their constitutional rights.  This is further compounded by the fact that the majority of the counts are also brought against each Defendant—many of whom have vastly different jobs and enforcement authority—without any explanation as to why or how group pleading is proper in this case.  *See Diamond Resorts U.S. Collection Dev., LLC v. Sumday Vacations, LLC*, No. 6:19-cv-982-Orl, 2020 WL 3250130, at *2 (M.D. Fla. Feb. 21, 2020) (explaining when group pleading is permissible, such as where "the role of each defendant is not unique and determinative of the defendant's liability").  Thus, the

Complaint is an impermissible shotgun pleading, making it exceedingly difficult for this Court to address the merits of—or to determine the likelihood of success on—any of Plaintiffs' claims.

Next, the Court finds that Plaintiffs have failed to establish standing for each claim asserted in this case. "The Constitution limits the jurisdiction of the federal courts to actual cases or controversies." *Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362, 1365 (11th Cir. 2017) (citing U.S. Const. art. III, § 2). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Id.* at 1365–66 (alteration in original) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "Under settled precedent, the 'irreducible constitutional minimum' of standing consists of three elements: the plaintiff must have suffered an injury in fact, the defendant must have caused that injury, and a favorable decision must be likely to redress it." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The foremost standing requirement is injury in fact. An injury in fact consists of an invasion of a legally protected interest that is both concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* (quotations omitted); *see also Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1119 (11th Cir. 2022). "Because the elements of standing 'are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation.'" *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (quoting *Lujan*, 504 U.S. at 561).

Although Plaintiffs argue that they have standing in their TRO, they fail to address standing on a claim-by-claim basis or as to each specific Defendant. "[T]he Supreme Court has instructed that 'standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages).'" *Bongiovanni v. Austin*, No. 3:22-cv-237, 2022 WL 1642158, at *7 (M.D. Fla. May 24, 2022) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208, 2210–11 (2021)); *see also Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356 (11th Cir. 2021). "That a plaintiff has standing to bring one claim does not save another claim for which he does not; 'standing is not dispensed in gross.'" *Mack*, 994 F.3d at 1356 (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)). Thus, Plaintiffs failure to adequately establish standing as to each claim and Defendant is a sufficient basis alone to deny the TRO.

Lest there be any question that Plaintiffs' standing is in serious doubt as to at least some aspects of this case, the Court will point out just a few of the many reasons Plaintiffs have failed to establish standing. First, the Individual Plaintiffs allege injury-in-fact based on physical discomfort, threat of arrest, and chilled speech. "To demonstrate an injury-in-fact, [the plaintiff] is required to show that he has a legally cognizable interest that has been or is imminently at risk of being invaded." *Mulhall v. UNITE HERE Loc. 355*, 618 F.3d 1279, 1286 (11th Cir. 2010). As to physical discomfort, Plaintiffs have failed to cite any legal authority for the proposition that they have a legal right to access a public restroom when necessary or to be free from discomfort based on the lack of a facility of their choice.

While threat of arrest and chilled speech are legally cognizable injuries, most of the Individual Plaintiffs have failed to allege that such rights are imminently at risk of being invaded. To be clear, Plaintiffs Butterfield, Kelly, Kochan, and Wood allege they will use restrooms "designated for the opposite sex at a public building" while in Orlando, but Butterfield, Kochan, and Wood only allege that they will refuse to leave if asked to do so if they are "accompanied by cisgender allies." (Doc. 1, ¶ 343; *see also* Doc. Nos. 2-4, 2-5, 2-9). Neither the Complaint nor the declarations submitted by these Plaintiffs indicate that they will frequently be accompanied by cisgender allies when using public restrooms. Furthermore, aside from the restrooms inside the airport, Plaintiffs largely fail to allege that they are actually allowed to use the restrooms in the various public facilities they allege they will encounter. For example, Plaintiffs allege they will need to use restrooms on the UCF campus. However, as Defendant Martins points out in his Response, visitors to the campus are only permitted to enter university buildings for authorized university business. (Doc. 25 at 3); *see also* Fla. Stat. § 1004.097(2)(d), (3)(b) (limiting the right of an individual wishing to engage in free speech on a college campus to the "outdoor areas of campus"). Plaintiffs have not alleged a right to enter any building on the UCF campus. Similarly, Plaintiffs allege they will be near Orlando City Hall and the Dr. Phillips Center during times that these buildings are open to the public and they may wish to use the restroom in these buildings. However, just because a building is a public building and generally open to the public for some purposes does not mean that it is open to the public for all purposes. Plaintiffs have not alleged that they have any right to enter either City Hall or the Dr. Phillips Center strictly to use the restrooms therein without any other business on the premises. *See, e.g.*, *Poor & Minority Just. Ass'n v. Judd*, No. 8:19-cv-T-

2889, 2020 WL 7128948, at *3 (M.D. Fla. Dec. 4, 2020). Accordingly, these Plaintiffs have fallen short of establishing that they are at imminent risk of arrest. Plaintiff Fors and Spero do not allege that they will take any actions that would put them at risk of arrest under the statute. Finally, with respect to chilled speech, Plaintiffs have failed to allege any speech that will be chilled. Plaintiffs rely strictly on the act of entering and using a bathroom as a form of symbolic speech, but "restroom use itself is not expressive conduct." *Id.* at *4 (citing *United States v. Gilbert*, 920 F.2d 878, 883 (11th Cir. 1991)).

With respect to Women in Struggle, its associational standing claims rise and fall with the injury of its identified member, Butterfield. Thus, because Butterfield has failed to establish standing, Women in Struggle has failed the first prong of associational standing. *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1160 (11th Cir. 2008) ("An organization has standing to enforce the rights of its members 'when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000))). As to direct standing, Women in Struggle alleges that it has diverted resource to educating members and participants about the law and strategizing ways to keep them safe. (Doc. 2-3, ¶¶ 38–39, 41). However, Women in Struggle seeks prospective relief in this lawsuit and fails to allege that any diversion of resources is currently ongoing or is likely to continue in the future. *See Cousins v. Sch. Bd. of Orange Cnty.*, 636 F. Supp. 3d 1360, 1375 (M.D. Fla. 2022). Furthermore, "[t]o prove injury in fact based on an organization's diversion of resources to protect individuals from harm, the organizational plaintiff must

prove *both* that it has diverted its resources *and* that the injury to the identifiable community that the organization seeks to protect is itself a legally cognizable Article III injury that is closely connected to the diversion." *City of S. Mia. v. Governor*, 65 F.4th 631, 638–39 (11th Cir. 2023).  Here, Women in Struggle has failed to show that the injury to its members is itself a legally cognizable injury for the reasons already stated.  Thus, the majority, if not all, Plaintiffs have failed to show an injury-in-fact.

Turning to traceability and redressability, Plaintiffs face additional problems.  At the outset, Plaintiffs have made only vague and conclusory allegations of enforcement authority as to a number of Defendants.  While Defendants Bain, Smith, and Mina have actual authority to enforce the laws of the State of Florida, Plaintiffs' allegations as to the remaining Defendants are lacking.  In fact, Defendants Keith, Edmonds, Dunn, Tong, Draper, and Martins—none of whom are alleged to have any legal authority to enforce the Act or to effectuate arrests—have explicitly stated that they are not vested with enforcement authority under the Act or the power to arrest Plaintiffs.  (*See* Doc. 22 at 3; Doc. 25 at 5; Doc. 27 at 3; Doc. 53 at 2).  Without more than Plaintiffs' vague and conclusory allegations regarding these individuals, it is unclear to the Court how any injury Plaintiffs might suffer would be traceable to these Defendants or how an injunction against them would afford Plaintiffs' any relief.  *See Supporting Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1205 (11th Cir. 2021).

As to Defendant Tyler, Plaintiffs allege that he oversees FDOT District 5, which encompasses Brevard, Flagler, Lake, Marion, Orange, Osceola, Seminole, Sumter, and Volusia Counties.  However, Plaintiffs only allege that Spero will encounter a single rest area operated by FDOT in Polk County.  (Doc. 1, ¶¶ 273–274; Doc. 28 at 1).  While

Women in Struggle makes broad allegations that other participants will drive through Florida and need to use the restroom, it fails to specify that these individuals would encounter and desire to use FDOT rest areas or that they would be prohibited from doing so.  Thus, this Court fails to see any allegation that would tie any perceived harm to Tyler or how an injunction against him would redress Spero's harm or the harm of any other person.  Additionally, with respect to Perdue, Plaintiffs fail to allege how Perdue has authority to enforce the Act against them or how restraining him would redress their harms as Plaintiffs have not alleged that Perdue has any authority over police departments or arresting authorities or that he has directed personnel to report unlawful use of FDOT's restrooms.  Finally, Spero's allegations regarding use of the rest area fail to state that Spero would even use the rest area if the Act were not in place.  At best, Spero alleges and declares a general fear of public restrooms due to the Act but fails to state that if Perdue or Tyler were enjoined from enforcing the Act, Spero would utilize the Polk County rest area en route to or from Orlando.  While this is far from an exhaustive discussion of the standing issues in this case, given Plaintiffs' failure to timely seek relief, it is sufficient to show that Plaintiffs have fallen well short of meeting their burden to establish standing as to the great majority, if not all, of their claims.

Even if Plaintiffs had established standing for their claims against Bain, Smith, and Mina, they still have not sufficiently established a likelihood of success on the merits because they have failed to allege a claim.  As an initial matter, Plaintiffs fails to specify the basis for brining constitutional claims against these Defendants.  However, in their Complaint Plaintiffs seek to recover their attorneys' fees and costs pursuant to 28 U.S.C. § 1988.  Since no such section exists, the Court assumes that Plaintiffs intended to seek

fees and costs pursuant to *42* U.S.C. § 1988, which allows for the award of fees and costs to the prevailing party in, among other types of cases, cases for constitutional violations brought pursuant to 42 U.S.C. § 1983.  Therefore, the Court presumes that Plaintiffs intended to rely on § 1983 as a vehicle for bringing these claims.

Bain, Smith, and Mina are sued in their official capacities.  "In contrast to individual capacity suits, when an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (quotation and footnote omitted).  "[T]o establish liability against [a sheriff] in his official capacity, [the plaintiff] had to prove that he suffered a constitutional deprivation as the result of: '(1) an action taken or policy made by an official responsible for making final policy in that area of the [Sheriff's Department's] business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker.'" *Goodman v. Kimbrough*, 718 F.3d 1325, 1335 (11th Cir. 2013) (quoting *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995)); *see also Norman v. Pasco/Pinellas Gov't Law Offs.*, No. 8:20-cv-2107-T, 2021 WL 11636945, at *3 (M.D. Fla. Jan. 21, 2021), *report and recommendation adopted*, 2021 WL 11636946 (M.D. Fla. Feb. 19, 2021).  However, both the Complaint and Plaintiffs' Motion fail to specify what policy or custom of each Defendant supports liability under the First or Fourteenth Amendments.  Instead, Plaintiffs dedicate their time exclusively to arguing that the underlying law is unconstitutional, without specifying any causal link between the actions of these Defendants and the alleged deprivation of a constitutional right.  Although Plaintiffs cite to Governor DeSantis's enforcement policy at length and note that non-compliant individuals can be

punished or removed from office, they still fail to allege any policy by the named Defendants or to state why the Governor's policy should be imputed to any of the named Defendants.

While some Courts have recognized that a plaintiff may be able to bring a claim for prospective injunctive relief against a municipality pursuant to *Ex Parte Young*, 209 U.S. 123 (1908), where the defendant was acting as an arm of the state in the context of the claim, Plaintiffs have not argued that they intended to sue these Defendants as arms of the state or made any allegations or arguments that would support such a contention. *See Schultz v. Alabama*, 42 F.4th 1298, 1314 (11th Cir. 2022); *Dream Defenders v. DeSantis*, 553 F. Supp. 3d 1052, 1085–86 (N.D. Fla. 2021). Thus, it does not appear that Plaintiffs have sought to invoke this exception and the Court will not consider its application in this case. Accordingly, even as to the limited Defendants against which Plaintiffs might have standing, the Court finds that Plaintiffs have failed to show a likelihood of success on the merits on any of the claims they attempted to allege in the Complaint.

While this is not an exhaustive list of the reasons that Plaintiffs' Motion can and should be denied, given the time constraints created by Plaintiffs' unexplained delay in filing their Motion, it suffices to say that Plaintiffs and their counsel have fallen far short of showing their entitlement to the extreme relief requested.

## IV.    CONCLUSION

For the reasons set forth herein, it is **ORDERED** and **ADJUDGED** that Plaintiffs' Emergency Motion for a Temporary Restraining Order (Doc. 2) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on October 6, 2023.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record